UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| ROY BURTON | CIVIL ACTION NO. 07-0746 |
| VS. | SECTION P |
| TERRY TERRELL, WARDEN | CHIEF JUDGE HAIK |
| | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the court is a petition for writ of *habeas corpus* (28 U.S.C. §2254) filed on or about April 23, 2007 by *pro se* petitioner Roy Burton. Burton is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated at the Allen Correctional Center, Kinder, Louisiana where he is serving the thirty year hard labor sentence imposed following his 2002 manslaughter conviction in the Fourteenth Judicial District Court, Calcasieu Parish.

This matter has been referred to the undersigned for review, report and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the District Courts since it is clear from the pleadings and exhibits that Burton's claims are without merit.

*Background*

Burton was charged with second degree murder and felony theft. [doc. 4-1, p. 3] On April 28, 2002 he pled guilty to manslaughter. [doc. 4-1, pp. 4-12]  On October 25, 2002  he was sentenced to serve thirty years at hard labor. [doc. 1-7, pp. 12-33]

2

On appeal, Burton's court-appointed appellate counsel argued a single assignment of error – excessiveness of sentence. [doc. 1-9, Exhibit H, unpublished opinion of the Third Circuit Court of Appeals at p. 22]

On April 10, 2003, Burton signed a *pro se* "Supplemental Brief in Support of Appeal." [doc. 1-4, Exhibit A]  He argued three *pro se* assignments of error – (1) excessiveness of sentence; (2) ineffective assistance of counsel; and (3) involuntary guilty plea. [*id.*]

On June 4, 2003 the Third Circuit affirmed Burton's conviction and sentence in an unpublished opinion. *State of Louisiana v. Roy Burton*, 2003-00183 (La. App. 3 Cir. 6/4/2003), 846 So.2d 1000 (Table). [See also Slip Opinion, doc. 1-9, Exhibit H]  The Third Circuit did not address Burton's *pro se* Assignments of Error, nor did the court acknowledge the filing of the Supplemental Pro Se Brief. [*id.*]  On July 16, 2003 Burton's application for rehearing was denied and notice of judgment was mailed to him and his court-appointed appellate counsel. [doc. 1-9, Exhibit I]

On some unspecified date, Burton filed a *pro se* application for writs in the Louisiana Supreme Court. Among other things, Burton noted,

> ... from a reading of the circuit court's decision dated June 4, 2003 ... it would appear that, for whatever reason, Appellant's pro se supplemental brief was not considered; none of the issues raised in the supplemental brief were mentioned nor were they addressed, nor was the fact that Appellant submitted a brief alluded to in the decision. Thus, it is Appellant's belief that his supplemental brief was, perhaps, lost in the mail or misfiled in the Clerk's Office.

[doc. 1-4, Exhibit B, p. 18]  Burton argued: 1) the Third Circuit erred when it failed to consider his pro se Supplemental Brief on appeal; 2) his sentence was excessive; 3) trial counsel was ineffective; and 4) his guilty plea was involuntary. [*id.*, pp. 18-19]

3

On July 2, 2004 the Supreme Court denied writs without comment. See *State of Louisiana ex rel. Roy Burton v. State of Louisiana*, 2003-2234 (La. 7/2/2004), 877 So.2d 139. [see also doc. 1-9, Exhibit J] Burton did not seek further direct review in the United States Supreme Court. [doc. 1-1, paragraph 6(d)]

On September 29, 2004 Burton filed a *pro se* petition for writ of *habeas corpus* in this court.  He argued three claims for relief: (1) ineffective assistance of counsel; (2) unintelligent and involuntary guilty plea; and (3) denial of right to be heard on appeal.  See *Roy Burton v. Kent Andrews, Warden*, No. 2:04-cv-2006 [hereinafter, *Burton I*]

On January 25, 2005, United States Magistrate Judge Alonzo P. Wilson issued a Report recommending dismissal of the petition based on Burton's failure to exhaust available state court remedies. On March 2, 2005, United States District Judge James T. Trimble, Jr. adopted the Report and Recommendation and signed a judgment dismissing Burton's *habeas* petition without prejudice based on Burton's failure to exhaust state court remedies. [*Burton I*, at doc. 5]

On November 1, 2004 Burton filed a *pro se* civil rights complaint in this court. *Roy Burton v. State of Louisiana, et al.*, No. 2:04-cv-2231 [*Burton II*] On June 14, 2005, Magistrate Judge Wilson issued a Report which construed some of Burton's claims as *habeas* claims and some as civil rights claims. Magistrate Judge Wilson recommended dismissal of the *habeas* claims for the same reasons he recommended dismissal of the claims asserted in *Burton I*. [See *Burton II*, at doc. 4] On July 28, 2005, United States District Judge Patricia Minaldi dismissed Burton's *habeas* claims without prejudice based on Burton's failure to exhaust available state court remedies. [*Burton II*, doc. 5]

4

Meanwhile, on or about June 2, 2005 Burton filed a *pro se* Application for Post-Conviction Relief in the Fourteenth Judicial District Court. Burton argued (1) that his right to be heard on appeal was denied by the Third Circuit and that his sentence was excessive; (2) that he was denied effective assistance of counsel; and, (3) that his guilty plea was involuntary. [doc. 1-4, Exhibit C] On November 15, 2005 his application was denied by the trial judge for failing to state claims for which relief might be granted pursuant to La. C.Cr.P. art. 930.3. [doc. 1-9, Exhibit K]

On December 2, 2005 Burton filed a *pro se* writ application in the Third Circuit Court of Appeals. [doc. 1-5, Exhibit D] On April 5, 2006 the Third Circuit denied relief noting:

> The trial court erred when it denied Relator's application for post-conviction relief for failure to state a claim upon which relief could be granted. See La. Code Crim.P. art. 930.3. However, after reviewing the claims presented by Relator in his application for post-conviction relief, this court finds no merit in Relator's assignment of errors. Relator failed to prove that the trial court abused its considerable discretion when it sentenced him to thirty years at hard labor. See *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *State v. Morrison*, 99-1342 (La. App. 3 Cir. 3/1/00), 785 So.2d 283, and La. Code Crim. P. art. 881.3. Relator failed to show that the facts of the case did not support a charge of second degree murder; therefore, defense counsel's performance was not defective when he advised Relator to plead guilty to manslaughter. Finally, Relator failed to prove that he did not understand the nature of the offense to which he pled, that he was not made aware of the minimum or maximum sentence, or that he was promised a cap of fifteen years of imprisonment.
>
> \*   \*   \*
>
> Accordingly, Relator's writ is denied. *State of Louisiana v. Roy Burton*, No. KH 05-1497 (La. App. 3 Cir. 4/5/2006) (unpublished). [doc. 1-9, Exhibit L]

Burton then filed a *pro se* writ application in the Louisiana Supreme Court. He argued four Assignments of Error: 1) the Third Circuit Court of Appeals erred when it exercised appellate jurisdiction prior to the entry of a final judgment or decree; 2) excessiveness of

5

sentence; 3) ineffective assistance of counsel; and 4) involuntary guilty plea. [doc. 1-5, Exhibit F]

On March 9, 2007 the writ application was denied as repetitive. *State of Louisiana ex rel. Roy Burton v. State of Louisiana*, 2006-1504 (La. 3/9/2007), 949 So.2d 436.[1]

On April 23, 2007, Burton filed the instant petition for writ of *habeas corpus* raising three claims:

1.  *Ineffective assistance of counsel* – Burton claims he entered an involuntary guilty plea because of the ineffective assistance of his trial counsel. He claims that counsel negotiated the plea to the lesser offense of manslaughter "... based on the erroneous belief that the facts of the case constituted Second Degree Murder, when in fact the state admitted they only established manslaughter from the onset..." Burton also claims that "systemic" deficiencies in the Calcasieu Parish Public Defender's Program deprived him of the right to counsel. [doc. 1-1, paragraph 5(a)];

2.  *Involuntary plea* – Burton alleges he was not made aware of the nature of the charges against him or the minimum and maximum sentence. [doc. 1-1, paragraph 5(b)];

3.  *Excessive sentence* – Burton alleges the trial court used sentencing factors found to be outside the permissible scope of inquiry by the United States Supreme Court in the case of *Sheppard v. United States*, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). [doc. 1-1, paragraph 5(c)].

On June 6, 2007, the undersigned completed a preliminary review of the petition, memorandum in support, and the accompanying exhibits. The undersigned noted that Burton had not provided a copy of the plea colloquy and therefore, on June 6, 2007, the respondent was

---

[1] The Supreme Court's writ denial is somewhat cryptic. The court denied relief citing La. C.Cr.P. art. 930.4(D) which provides, "A successive application may be dismissed if it fails to raise a new or different claim." The record suggests that Burton litigated only one post-conviction application in the Louisiana courts. To the extent that the Supreme Court determined that Burton's post-conviction claims were identical to his *pro se* claims raised on direct appeal, it appears that the claims were fully exhausted since the Supreme Court must have considered the merits of the claims on direct review.

6

directed to provide a certified copy of the plea colloquy. [doc. 2] On July 5, 2007, the respondent complied with the order and submitted the information requested. [doc. 4]

### *Law and Analysis*

### *1. Rule 4 Considerations and Conclusion*

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides that following examination of the pleadings by the court, "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."  (See also *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999), "The district court has the power under Rule 4 to examine and dismiss frivolous *habeas* petitions prior to any answer or other pleading by the state. This power is rooted in 'the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer.' 28 U.S.C. foll. § 2254 Rule 4 Advisory committee Notes.")

Burton has provided the exhibits needed to conduct a thorough review of his claims.  His references to the plea colloquy encouraged the undersigned to obtain a certified copy of the entirety of those proceedings. Based upon a review of the petition, memorandum, and exhibits, it is clear that Burton is not entitled to relief.

### *2. Involuntary Guilty Plea*

A guilty plea must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). If a challenged guilty plea is knowing, voluntary, and intelligent, its validity must be upheld on federal *habeas* review.

7

*James v. Cain*, 56 F.3d 662, 666 (5 Cir.1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5 Cir.1979). He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)).

The record of the plea proceeding in this case refutes Burton's assertion that his plea was involuntary. To the contrary, the record, and particularly the plea transcript, establishes that Burton understood and was aware of the consequences of his plea, that he was mentally competent, and that his plea was freely and voluntarily entered without promises, threats or coercion. *Blackledge*, 431 U.S. at 74; *Kelley v. Alabama*, 636 F.2d 1082, 1084 (5 Cir.1981).

Burton executed a "Waiver of Constitutional Rights and Plea of Guilty" form in conjunction with the entry of his plea. In that document Burton attested that he understood the nature of the charge and was aware of the minimum and maximum sentences provided by law; he also attested that he understood and was willing to waive his rights to be tried by a jury and to confront and cross-examine the witnesses; his right to compulsory process to require witnesses to testify on his behalf; his privilege against self-incrimination; his right to appeal a guilty verdict; and, his right to counsel. He further acknowledged that he was guilty of the offense charged and that he had not been induced to plead guilty or sign the statement by any threat, pressure or force. Finally, he acknowledged that his plea was "entirely free and voluntary." [doc. 4-1, p. 4]

8

The transcript of the plea colloquy likewise reflects that Burton's plea was voluntary. In the colloquy, Burton advised the judge that he understood the nature of the charge against him and that he had been made aware of the minimum and maximum sentences provided by law. [doc. 4-1, pp. 6-7] He admitted that he understood that he was waiving his rights to trial by jury; confrontation; and, compulsory process. He acknowledged that he understood and was waiving his privilege against self-incrimination; his right to appeal an adverse verdict; and his right to counsel. [doc. 4-1, p. 7] He further acknowledged that he had not been "induced to plead guilty or sign this statement by any threat, pressure, or force..." and that he made his plea "... entirely freely and voluntarily..." [*id.*] He further acknowledged that the plea agreement provided that the court could impose any sentence "... between the minimum and maximum provided by law for manslaughter..." [doc. 4-1, pp. 8-9] Finally, he conceded the truth of the factual basis of the plea recited by the prosecutor, "On or about April 30th, 2000 the defendant committed a homicide of one Joseph Savoy in the perpetration of a felony theft..." [doc. 4-1, p. 10]

Such representations by a defendant during plea proceedings carry a strong presumption of verity and Burton has not rebutted that presumption. Compare *Blackledge*, 431 U.S. at 74. Based on the evidence supplied, it appears beyond any doubt, that Burton's plea was knowing and voluntary.

### 3. Ineffective Assistance of Counsel

As guaranteed by the Sixth Amendment, criminal defendants have a constitutional right to the effective assistance of counsel at trial. To prevail on an ineffective assistance claim in the context of a guilty plea, a *habeas* petitioner must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of

9

reasonableness, and (2) there is a reasonable probability that, <u>but for</u> counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (emphasis supplied); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Smith v. Estelle*, 711 F.2d 677, 682 (5 Cir.1983).[2]

In analyzing such claims, a federal *habeas* court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Strickland*, 466 U.S. at 668, 688-89. Thus, post-trial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

With regard to the first prong of the *Hill v. Lockhart* test, Burton argues that his court-appointed trial counsel was ineffective when he mistakenly assumed that petitioner was guilty of second degree murder.

Burton was originally charged with second degree murder and felony theft. [doc. 4-1, p. 3, Bill of Indictment] Second degree murder is defined under Louisiana law as either the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm, or, the killing of a human being when the offender is engaged in the perpetration of certain

---

[2] Burton's claim of ineffective assistance of counsel based on various "systemic" deficiencies in the Calcasieu Parish Public Defender's Office must also be analyzed under the same standard as his specific claim of ineffective assistance of counsel. In either case, in order to prevail, petitioner must demonstrate prejudice; and, in the context of an allegedly involuntary guilty plea, petitioner must establish that but for the deficient performance of counsel, he would have rejected the plea agreement and gone to trial. *Hill v. Lockhart*, *supra*.

10

enumerated felonies, even though the offender has no intent to kill or to inflict great bodily harm. La. R.S.14:30.1.

In this case, the charging instrument used the "short-form" indictment as provided by La. C.Cr.P. art. 465(A)(32). Burton was obviously charged under the "specific intent" provision of the statute since "felony theft" is not one of the enumerated felonies which would support a "felony-murder" charge under the statute.[3]

On direct appeal, the Third Circuit reviewed the record and articulated the operative facts of the case as follows:

> On April 30, 2000, [the victim] was found dead, wrapped in a blanket, next to the dumpster, behind the Market Basket grocery store ... in Lake Charles, Louisiana. *It was determined that the victim, a young man of slight build, was approached from behind by defendant, Roy E. Burton, and strangled with a bungee cord. When [the victim] was found, the bungee cord was still fastened around his neck. There was no sign of a struggle. After killing [the victim] the Defendant stole his new black Nissan pickup truck.* The Defendant was arrested in the victim's truck in St. Tammany Parish for driving while intoxicated.

*State of Louisiana v. Roy Burton*, 2003-00183 (La. App. 3 Cir. 6/4/2003), 846 So.2d 1000 (Table) (emphasis supplied). [See also Slip Opinion, doc. 1-9, Exhibit H]

Burton himself admitted, "On the morning of April 29, 2000, Appellant, a professed alcoholic, after having been out drinking all night, had ridden his bicycle to the Lake Front in Lake Charles. Shortly after arriving, Appellant met the victim ... who, having a pickup truck, and observing Appellant to be too drunk to even ride a bicycle, offered to give Appellant a ride back to his motel, which Appellant gladly accepted. The bicycle was placed in the back of the pickup

---

[3] Under the statute, "felony-murder" is committed when the perpetrator is engaged in the perpetration or attempted perpetration of aggravated or forcible rape, aggravated arson, aggravated burglary, aggravated or second degree kidnapping, aggravated escape, assault by drive-by shooting, armed or first or second degree or simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism. See La. R.S.14:30.1 (A)(2)(a) and (b).

11

truck. During the trip back to the motel, Appellant continued to drink while conversing with [the victim]. During the course of the conversation Appellant passed out from alcohol consumption. Appellant was awakened sometime later to find the victim ... caressing his penis. *Because Appellant was still under the affect* [sic] *of the previously consumed alcohol, coupled with a fury from the unwelcome sexual intrusion upon his person, Appellant has little memory of what transpired, until he realized that [the victim] was dead at his own hands. In a fit of panic, Appellant moved [the victim's] body to a nearby parking lot and left the area in [the victim's] vehicle.* [doc. 1-4, Exhibit A, p. 4, emphasis supplied]

Under Louisiana law "specific intent" is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1).  Because specific intent is a state of mind, it need not be proven as fact, but may be inferred from the circumstances and actions of the accused, as well as the extent and severity of the victim's injuries. *State v. Keating*, 00-51, p. 5 (La.App. 5 Cir. 10/18/00), 772 So.2d 740, 743, *writ denied*, 00-3150 (La.10/18/00), 772 So.2d 740, 743, *writ denied*, 00-3150 (La.10/12/01), 799 So.2d 494.  Evidence that a criminal defendant choked his victim to death has been determined sufficient to establish a specific intent to kill. *State v. Hendricks*, 38,945 (La. App. 2d Cir. 9/22/2004), 882 So.2d 1212;  *State v. Stein*, 04-23 (La. App. 5th Cir. 4/27/04), 874 So.2d 279; *State v. Cepriano*, 00-213 (La. App. 5th Cir. 8/29/00), 767 So.2d 893; *State v. Mosely*, 475 So.2d 76 (La. App. 2 Cir. 1985).

Based on the apparently undisputed fact that Burton approached his victim from behind and choked him to death with a bungee cord, there was ample evidence that he possessed the

12

requisite specific intent to kill; had Burton elected to go to trial, there was apparently sufficient evidence to convict him of second degree murder.

Burton claims that his court-appointed trial counsel was mistaken in his belief that Burton had committed a second degree murder. Burton implies that this mistaken belief in the nature of the charge amounted to deficient performance on the part of counsel. However, as shown above, Burton is incorrect. The available evidence strongly suggests that Burton would have been convicted of specific intent murder had he elected to go to trial. Burton has not shown that counsel's performance was deficient when he negotiated a plea agreement to manslaughter.

More importantly, even if Burton could show deficient performance on the part of counsel, he cannot show prejudice. As shown above, prejudice in the context of a guilty plea requires the petitioner to demonstrate that "<u>but for</u>" counsel's alleged errors, petitioner would have rejected the plea offer and stood trial for second degree murder. At the sentencing hearing, Burton testified that he committed the "awful act" which resulted in the death of his victim [doc. 1-8, p. 5]; he claimed that he did not commit the "act" in order to steal his victim's truck, and, although he claimed to have no recollection of the homicide, he admitted that he remembered "... the immediate aftermath of this terrible act..." [*id*., pp. 5-6] He admitted that while he initially intended to go to trial, he ultimately changed his mind and told his attorney that he "... just wanted to go ahead and ... plead guilty..." to manslaughter because he believed that manslaughter was the appropriate charge under the circumstances. [*id*., p. 6] According to Burton, "To the facts as I know them, I did not intentionally – I did not have the intent to hurt nobody... I wanted the truth to be known. I didn't want any lies. I didn't want to fabricate any stories to try to prove my innocence, to drag this family through anymore than they've already been drag [sic] through.

I wanted this to end. I wanted the truth to be known ... I'm scared. How – how do you look at somebody and tell them that you've taken their loved one's life. There's no justification for that..." [*id*., p. 7] In other words, it is clear that Burton decided to plead guilty to manslaughter because he was in fact guilty of that offense. His claim that the deficient performance of his trial attorney was the cause in fact of his plea is refuted by the very record he has submitted.

Since Burton has not shown deficient performance on the part of counsel and since he cannot demonstrate prejudice, his claim of ineffective assistance of counsel must fail.

### *4. Excessiveness of Sentence*

Finally, Burton contends that his 30-year sentence was excessive because the trial court used factors found to be outside the permissible scope of inquiry by the United States Supreme Court in the case of *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). [doc. 1-1, paragraph 5(c)]. At the outset, it must be noted that *Shepard*, *supra*, involves review of sentences imposed under the federal Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e). Burton's reliance on *Shepard* is clearly misplaced.

Burton's excessive sentence claim must be analyzed under the Eighth Amendment's "cruel and unusual punishment" provision. In order for a *habeas* petitioner to establish cruel and unusual punishment, he must establish that the punishment meted out to him was grossly disproportionate to the crime he committed. *Ewing v. California*, 538 U.S. 11, 20-24, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003); *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). If the sentence imposed was within the state's statutory limits, however, the sentence is entitled to a presumption of constitutionality and will not be upset unless the sentence is so

14

disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir.1975).

To determine whether a sentence was disproportionate, the federal *habeas* court must utilize the test set out in *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992). The reviewing court first weighs the gravity of the offense against the severity of the sentence. *Id.* at 316. If the sentence is "grossly disproportionate" in relation to the offense, then the sentence should be compared to "(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *McGruder*, 954 F.2d at 316. If the sentence is not "grossly disproportionate," however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942-43 (5th Cir.1997).

As the Supreme Court has noted, outside the context of capitol punishment, successful proportionality challenges are "exceedingly rare" and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing*, 538 U.S. at 21; *Lockyer v. Andrade*, 538 U.S. 63, 73, 77, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Burton was convicted of manslaughter. Under Louisiana law, manslaughter is punishable by a sentence of up to 40-years. La. R.S.14:31(B). Burton's 30-year sentence was within the statutory limit and, therefore, presumptively constitutional. Burton has not established that his 30-year sentence was "grossly disproportionate." Since the 30-year sentence is not grossly disproportionate, further inquiry into the proportionality of his sentence is unnecessary. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997).

Therefore,

15

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts since it plainly appears from the face of the petition and exhibits annexed to it that the petitioner's claims are without merit.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on July 18, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)